

EOD
01/18/2019

# IN THE UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF TEXAS SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| ROYAL T ENERGY, LLC § | | CASE NO: 17-42386 |
| § | | (Chapter 11) |
| DEBTOR. § | | |
| § | | |
| § | | |
| ROYAL T ENERGY, LLC § | | |
| § | | |
| PLAINTIFF, § | | |
| § | | |
| v. § | | ADVERSARY NO. 18-04004 |
| § | | |
| ENGS COMMERCIAL FINANCE CO., § | | |
| § | | |
| DEFENDANT. § | | |

## MEMORANDUM OPINION

This adversary proceeding is before the Court on a motion for summary judgment filed by the defendant, ENGS Commercial Finance Co. ("ENGS"), as well as its brief in support of its motion. The debtor, Royal T. Entergy, LLC, opposes the motion. The Court exercises its core jurisdiction over this matter, *see* 28 U.S.C. §§ 157(b)(2)(A), (O) and 1334, and makes the following findings of fact and conclusions of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

(A) citing to particular parts of materials in the record, including depositions,

1

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the ... presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

The way the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this instance, the burden of persuasion rests on the non-moving party, "the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477, U.S. at 322-323 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (internal citations omitted).

In this case, the parties have essentially stipulated that there is no factual dispute in need of resolution and have presented opposing arguments based upon application of appropriate law. For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995); *Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) ("A federal court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly."). ENG's motion and the debtor's response set forth the following body of uncontested facts.

## UNCONTESTED FACTS

On November 14, 2013, the debtor entered into a Commercial Lease Agreement (the "Lease") with ENGS for the lease of a 2011 Kenworth T800 with Cobra Truck-Mounted Hot

Oil United (the "Equipment"). ENGS is the owner of the Equipment and filed a UCC-1 covering the Equipment. Additionally, the Texas Certificate of Title shows that ENGS is the owner of the Equipment.

The Lease required the debtor to make a one-time advance payment to ENGS in the amount of $100,000.00. In addition, the Lease required the debtor to make monthly rental payments of $9,520.74 to ENGS for a period of forty months. The Equipment has a useful life of approximately 20 years.

Paragraph 2 of the Lease provides that the debtor may not cancel the Lease during its term for any reason, including equipment failure, loss or damage. Any request for cancellation or early termination is at ENGS's sole discretion. Paragraph 9 of the Lease, titled "END of Lease Events," provides that upon expiration of the Lease, the debtor can terminate the Lease with no additional obligations or, alternatively, the debtor can purchase the Equipment by choosing one of four opinions: (1) the "Fair Market Value" option; (2) the "Stated Purchase" option; (3) the "Payment Upon Termination" option; or (4) the "TRAC Lease" option.

As one of the attachments of the Lease, the debtor and ENGS entered into a terminal rental adjustment clause ("TRAC") rider arrangement. Pursuant to the TRAC, the "Estimated Fair Market Value" at the time the Lease expires is $74,300.00. The TRAC provides that it is anticipated that the Equipment will be sold on the open market to a third party upon the expiration of the initial term of the Lease. If the Equipment is sold for less than the Estimated Fair Market Value, the deficiency shall be paid by the debtor to ENGS. If the Equipment is sold for more than the Estimated Fair Market Value, ENGS shall pay the surplus to the debtor.

Paragraph 2 of the TRAC, titled "CONDITIONS FOR RETURNED VEHICLES," provides that if, at the expiration of the Lease or an earlier termination, the debtor returns the Equipment to ENGS, the debtor shall ensure that all operating components will be able to

3

perform their originally intended operating function. Any vehicle returned with "Normal Wear and Tear" will be accepted with no additional charges owing. However, for vehicles returned in a condition beyond "Normal Wear and Tear," additional charges will be calculated based on paragraph 2 of the TRAC.

Paragraph 3 of the TRAC, titled "INTENT; TITLE," provides that it is the express intent of the parties that the Lease constitutes a true lease and not a sale of the Equipment. Paragraph 3 further provides that title to the Equipment shall at all times remain in ENGS. The Lease provides that the debtor shall acquire no ownership, title, property, right, equity, or interest in the Equipment other than its leasehold interest solely as lessee subject to all the terms and conditions of the Lease.

The debtor defaulted on the Lease and remains past due under the Lease. Prior to bankruptcy, ENGS filed a lawsuit against the debtor and the guarantor of the Lease, Otila Salinas, in the 143rd Judicial District Court of Reeves County, Texas, Case No. 17-04-21930-CVR, and obtained a writ of sequestration.

On November 1, 2017 (the "Petition Date"), the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The debtor has continued to possess and use the Equipment post-petition. According to an affidavit by one of the debtor's owners in support of its opposition to ENG's motion, the Equipment is currently worth more than the Estimated Fair Market Value of $74,300.

On November 30, 2017, ENGS filed its *Motion for Relief from Automatic Stay or, Alternatively, Adequate Protection without Waiver of 30-Day Hearing Requirement* (the "Stay Relief Motion"). On January 24, 2018, the Court entered the *Order on Motion for Relief from Stay* (the "Stay Relief Order"), pursuant to which the stay was conditionally continued, and the debtor was to make monthly payments to ENGS in the amount

4

of $3,960.00 for the six finance agreements and one Lease between ENGS and the debtor. The Stay Relief Order also provided that $645.00 of the monthly payment should be applied to the Lease.

On January 19, 2018, the debtor filed the *Plaintiff's Complaint to Determine Lien or Interest in Property* the "Complaint"), seeking the Court's determination that the Lease is a financing transaction. ENGS filed its answer on February 28, 2018. The Court held a trial scheduling conference on May 3, 2018, and entered an Order Arising from Management Conference setting certain deadlines.

On July 24, 2018, in the underlying bankruptcy case, the debtor filed the *Amended Plan of Reorganization of Royal T. Energy, LLC*. ENGS objected to confirmation of the proposed reorganization plan. On September 7, 2018, the debtor filed a *Second Amended Plan of Reorganization of Royal T. Energy, LLC*. At the confirmation hearing held on September 11, 2018, the Court confirmed the proposed plan. Subsequently, the Court entered its *Order Confirming Debtor's Amended Plan of Reorganization* (the "Confirmation Order"). Pursuant to the Confirmation Order, the debtor is to pay ENGS, for the Lease, the amount of $59,925 in 60 equal monthly installments with interest at the rate of 5% per annum, pending the final resolution of this adversary proceeding.

The Confirmation Order also provides that ENGS reserves the right to fully litigate this adversary proceeding and any related matters, including but not limited to, asserting all claims and defenses in the adversary proceeding. If the Lease is determined to be a true lease, the Equipment shall be surrendered to ENGS and ENGS reserves the right to assert any lease rejection damage claim within 30 days of the date of such judgment.

## DISCUSSION

In this adversary proceeding, the parties dispute whether the Lease is a true lease or a financing transaction. To determine whether a contract is a true lease, the Fifth Circuit looks to state law. *First Guaranty Bank. v. Pioneer Health Services, Inc. (In re Pioneer Health Services, Inc.),* 2018 WL 3747537 at *2

(5th Cir. 2018) (citation omitted). Here, Paragraph 16 of the Lease provides that it is governed by Illinois law.

Illinois, like many other states, has adopted the Uniform Commercial Code. Section 1-203(b) of the Illinois Uniform Commercial Code (the "I-UCC") sets forth the standard for determining of whether a transaction in the form of a lease is really a security agreement. It provides as follows:

> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>
>> (1) the original term of the lease is equal to or greater than the remaining economic life of the goods;
>> (2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>> (3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
>> (4) the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

810 ILCS 5/1-203(b).[1]

In short, § 1-203(b) of the I-UCC provides that a "lease will be construed as a security interest as a matter of law if the debtor cannot terminate the lease and one of the enumerated requirements

---

[1] In addition, the I-UCC provides that

> A transaction in the form of a lease does not create a security interest merely because …(1) The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into…(3) the lessee agrees to pay, with respect to the goods, taxes, insurance filing, registration fees, or service or maintenance costs."

810 ILCS 5/1-203(c). See also In re Marhoefer Packing Co., Inc., 674 F.2d 1139, 1146 (7th Cir. 1982) ("Costs such as taxes, insurance and repairs are necessarily borne by one party or the other. They reflect less the true character of the transaction than the strength of the parties' respective bargaining positions.")

is satisfied." *Banterra Bank v. Subway Equipment Leasing Corp. (In re Taylor)*, 209 B.R. 482, 484 (Bankr. S.D. Ill. 1997). *See also, e.g., In re Lerch*, 147 B.R. 455, 460 (Bankr. C.D. Ill 1992), *Mason v. Heller Financial Leasing (In re JII Liquidating, Inc.)*, 341 B.R. 256, 268 (Bankr. N.D. Ill. 2006). This is sometimes referred as the "*per se* test." *In re JII Liquidating, Inc.*, 341 B.R. at 268. "If the Court determines that the transaction is not a disguised security agreement *per se*, it must then look at the specific facts of the case to determine whether the 'economics of the transaction' suggest such a result." *In re Taylor*, 209 B.R. at 484 (citations omitted).

When determining whether a lease is a true lease or a security agreement, there is a rebuttable presumption that a transaction denominated as a lease agreement, is in fact a bona fide lease, absent compelling factors to the contrary. *In re JII Liquidating, Inc.*, 341 B.R. at 259. Accordingly, in this proceeding, the debtor has the burden of rebutting the presumption that the Lease is a true lease by proving the elements of I-UCC § 1-204(b) or by establishing that the economic realities of the transaction created a security agreement. *Id.* If that presumption is overcome, then the burden shifts to ENGS to refute the evidence that the Lease constitute a security agreement. *Id.*

Here, the debtor cannot terminate the Lease. However, to satisfy the "*per se* test" and establish that the Lease is really a financing agreement as a matter of law, the debtor must also satisfy one of the four enumerated factors. The debtor has not attempted to do so. The Court, therefore, concludes that the debtor has failed to satisfy the "*per s*e test" as a matter of law.

Instead, the debtor seeks to establish that the Lease is a financing transaction based on the specific facts and "economic realities" of the transaction. First, the debtor asserts that the presence of the TRAC rider is a "key factor" for establishing that the transaction is a security agreement. However, the TRAC rider does not grant the debtor equity in the Equipment. The TRAC rider simply shifts the risk that the actual value of the Equipment at the end of the Lease will be less than the Estimated Fair Market Value. As one court explained, a TRAC rider "is simply a more

7

sophisticated means to measure the true extent to which the lessee has consumed the lessor's interest in the goods." *See In re HP Distribution, LLP*, 436 B.R. 679, 6934 (Bankr. D. Kan. 2010) (holding that the lessee's duties to hold the lessor harmless for any depreciation in addition to the agreed residual price does not make the transaction more like a loan than a lease).

The debtor also asserts that the TRAC rider obligates it to pay ENG a final "balloon payment" at the end of the Lease term. This is a mis-reading of the TRAC rider. As previously described, upon expiration of the Lease, the debtor has the option to either purchase the Equipment for its Estimated Fair Market Value in the pre-determined amount of $74,300.00 or surrender the Equipment to ENGS. If the debtor chooses to surrender the Equipment, ENGS would then sell the Equipment in the open market to a third party. If the debtor elects to surrender the equipment, the debtor would only be required to make a payment to ENGS in the event the market determines that the surrendered Equipment is worth less than the Estimated Fair Market Value.

The debtor relies on *In re Grubbs Const.*, 319 B.R. 698, 719 (Bankr. M.D. Fla. 2005), to support its arguments. However, in contrast to the TRAC rider in *Grubbs*, the TRAC rider in this case does not obligate the debtor to purchase the Equipment at the end of the Lease. The debtor has a choice to make. The fact that the TRAC rider allows ENG to retain the sale proceeds of the Equipment in the fixed amount of $74,300.00 does not take away the debtor's option. On the contrary, it confirms that ENG retains a meaningful reversionary interest in the Equipment and it also creates an incentive for the debtor to use and maintain the Equipment in a way that protects ENG's right as the owner of the Equipment.

In summary, the Lease states that the parties intended the transaction to be a lease, not a security agreement. There is no indication that the present value of the lease payments equals or exceeds the value of the Equipment. There is no evidence that the Estimated Fair Market Value of the Equipment was set as a price less than the anticipated fair market value of the Equipment. Finally,

8

the debtor cannot obtain the Equipment for a nominal sum at the end of the Lease terms but must make a substantial payment to acquire it. *See In re Beckham*, 275 B.R. 598, 605 (D. Kan.), *aff'd,* 52 F. App'x 119 (10th Cir. 2002) (concluding that a lease with a TRAC rider was a true lease based on the "economic realities").

## CONCLUSION

For all the foregoing reasons, the Court concludes that the debtor failed to overcome the presumption that the Lease is a true lease as a matter of law. The Court will enter a separate judgment consistent with this memorandum opinion.

Signed on 1/18/2019

*Brenda T. Rhoades* MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE